# United States District Court
## District of Delaware

RECEIVED
MAY 05 2015
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Jerry A. Hurst
Plaintiff, pro se

v.

Colin M. Shalk, Maxwell
Wiegard, Marty Harbin,
Guy Harbert, Nicholas
Skiles, in their individual
and official capacities; State
Farm Mutual Automobile Insurance
Company; and Does 1–10.

Civil Action
No. ___15-360___

Complaint For:

1. Damages;
2. Injunctive
   Relief; and
3. Declaratory
   Relief.

Jury Trial Demanded

## Complaint

Plaintiff, Jerry A. Hurst ("Hurst"), Alleges:

## Jurisdiction

**1.** This Court has original jurisdiction pursuant to 28 U.S.C.A. § 1331 due to the pleaded violations of a federal statute, e.g. 18 U.S.C.A. §§ 2721-2725, the "Driver's Privacy Protection Act" (DPPA). Supplemental jurisdiction to hear the state law claims exists pursuant to 28 U.S.C.A. § 1367(a).

## Venue

2. Shalk and Skiles are individuals residing in Delaware. State Farm is a corporation registered to do business in, and doing substantial business in Delaware.

(1)

3. Shalk and Skiles are individuals residing in Delaware who have transacted business in, and committed repeated actionable acts in Delaware and in Virginia. These acts include, but are not limited to, violations of the DPPA, the Virginia Consumer Protection Act (VCPA)(VA. Code Ann. §59.1-444); the Virginia Personal Information Privacy Act (VPIPA) (VA. Code Ann. §59.1-443.2(A)(1)); and Virginia common law as set forth below. Harbert, Wiegard and Harbin are individuals employed by, or legal counsel and agents for, State Farm committing repeated actionable acts in Delaware, including the aforementioned DPPA and other cited laws, as well as in Virginia.

Personal Jurisdiction

4. Personal jurisdiction over the Virginia residents (Harbin, Wiegard and Harbert), each of whom personally acted, as set forth in this complaint, to directly target and interfere with the judicial process itself of the United States District Court for Delaware by filing Hurst's DPPA protected personal information in violation of the DPPA, thus disclosing, and making this personal information accessible on the internet worldwide as alleged below. This caused major "affects" in the forum state of Delaware allowing personal jurisdiction under 10 Del.C. §3104(c), Delaware's long-arm statute. See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). The defendants' acts are purposeful and willful and are based on their claim of an "Absolute litigation privilege" in Delaware common law set forth in Barker v. Huang, 610 A.2d 1341, 1345 (Del. 1992). The DPPA, a federal statute, flatly prohibits the defendant's acts in any state. The defendants' agreed activities, performed in concert, are expressly confessed by Wiegard and Shalk as set forth in par. 10 below forming a continuing pattern from 2006, to 2008, through 2011.

The violations were initially discovered on May 9, 2011, upon delivery of copies of the unredacted papers filed by Shaik and Stiles on May 6, 2011, acting in concert pursuant to an agreement with the other defendants. The malicious disclosure was in Jerry A. Hurst v. State Farm Mutual Automobile Insurance Company, et. al., No. 10-1001-GMS on an "Affidavit Of Vehicle Theft" filed previously with State Farm as set forth in §2721(b)(6) of the DPPA in connection with an insurance claim investigation.

Particularized Facts

Count I - Breach of Implied Covenant of Good Faith and Fair Fair Dealing and of Written Privacy Policy of State Farm and of §§2722 and 2724 of the DPPA

5. The contract for insurance in force at all times set forth in this complaint, including at the present time, with Hurst contains a "Notice of Privacy Policy" which, inter alia, states that

"We contractually require any person or organization providing ... services on our behalf to protect State Farm customer information." (emphasis added)

The insurance contract with Hurst is renewed semiannually, with the above-noted Privacy Policy as an integral part of the contract. It was relied on by Hurst to guard against the clear possibility of credit card fraud, identity theft and other dangers inherent in the disclosure of his personal information. State Farm intentionally induced Hurst's reliance on both the implied covenant of good faith and State Farm's written Privacy Policy, an integral part of its insurance contract, and breached both, resulting in disclosure of Hurst's personal information available for identity theft on the internet worldwide. These acts were knowing, willful and malicious.

6. The DPPA clearly prohibits false advertising

and false representations to obtain DPPA pro-
tected information as set forth in § 2722.
Criminal penalties are provided in § 2723 and a
civil action for damages is provided in § 2724,
and specifically prohibiting "False representation" in § 2722(b).

7. The DPPA protected information is delineated
in § 2725 (3) and referred to as "personal
information." In reliance on State Farm's Privacy
Policy, Hurst provided many items of this
"personal information" to State Farm on an affidavit
in 2001 due to the theft of his fifteen passenger
van with customized electronic steps for passengers.
These items of personal information, protected
by the DPPA, included Hurst's <u>social security
number</u>, driver identification number, address,
<u>date of birth</u>, motor vehicle title, motor vehicle
registration, motor vehicle operator's permit,
license plate number and other "information
that identifies an individual" as set forth
§ 2725 (1) and (3). This personal information
was sent directly to State Farm as an "authorized
recipient" under § 2721(c) of the DPPA, who then provided it
to their legal counsel and agents, e.g. Wiegand and Harbert. These
Attorneys, in direct response to Shalk's <u>repeated solicitations</u>,
<u>confessed</u> in par. 10 below, <u>redisclosed</u> Hurst's personal information <u>to Shalk</u>.

8. At <u>no time</u> has Hurst ever provided consent,
in <u>any form</u> whatsoever, for State Farm or
any other defendant to disclose Hurst's per-
sonal information for <u>any purpose</u>. <u>Nor has</u>
Hurst waived his "<u>right to privacy</u>," or been
requested to waive his right to privacy" as
set forth in § 2721 (d). <u>Nor</u> has Hurst provided
"consent" under § 2721 (a)(11) "<u>for any other use</u>."

9. Nevertheless, in direct violation of its Privacy
Policy, an integral part of State Farm's insurance

contract, State Farm disclosed **All** of the above-noted personal information protected by the DPPA to Shalk directly, and through Shalk to numerous other unauthorized recipients set forth in this complaint, including defendant **Skiles**. State Farm's manager of Hurst's claim was **Harbin** who authorized all acts of its legal counsels.

**10.** The disclosures by, State Farm were done willfully and knowingly and with a reckless disregard as set forth in § 2724 (a) and (b)(2) since Shalk, an Attorney, And Wiegard (legal counsel and agent for State Farm) expressly confess Shalk's <u>solicitation</u> and State Farm's <u>illegal</u> <u>redisclosure</u> under §2721(c) to Shalk:

- Wiegard in a letter dated November 24, 2008 to Hurst states Harbert (also Attorney of record with Wiegard for State Farm) physically had <u>sent</u> Hurst's personal information directly to **Shalk** on an <u>undisclosed date</u>. Wiegard admits that Hurst's personal information had been

  "... sent to Mr. Shalk by Mr. Harbert ..."

  [Wiegard's letter of November 28, 2008; p. 1 ]


- Likewise Shalk states in a document dated "June 15, 2012" and mailed to Hurst that on some <u>undisclosed</u> date(s)

  "... Hurst revealed that he sued State Farm for the van. Attorney **Shalk** then made a <u>series</u> of phone calls <u>to</u> determine who was defending Mr. Hurst's suit... <u>to ask</u> State Farm's counsel for a <u>copy</u>... The attachments included the <u>Affidavit</u> of vehicle theft.

While there was certainly a discussion about our common plaintiff and his idiosyncracies, _that ended the involve-ment between counsel_." (emphasis added)

[Document signed by "Colin M. Shalk" dated "June 15, 2012" and sent to Hurst.]

It is important to note that absolutely no "dis-cussion" or "involvement between counsel" even mentioned or broached compliance with the DPPA (i.e permissible uses under the DPPA, or any limitation whatsoever on further disclosures to unauthorized recipients). The willful violation of State Farm's Privacy Policy and the DPPA was not only done with malice, it was done with a reckless disregard of the eventual wide-spread dissemination of Hurst's personal information as set forth in §2724 (b)(2) of the DPPA. In fact this personal information, and all of it, was subsequently filed, pursuant to State Farm's agreement to provide the personal information to Shalk, on the CM/ECF system of the Delaware fed-eral district court. The results are devastating in terms of unlimited damages and identity theft as explained in a federal district court decision, with precisely analogous circumstances as the instant case. See _In Re Maple_, 434 B.R. 363 (Bkrcty. E.D. VA. 2010). Regarding Shalk's prohibited "solicitation," see _Maracich v. Spears_, 133 S.ct. 2191, 2205 (2013) specifically holding such conduct pursuant to §2721(b)(6) to be in violation of the DPPA.

11. The latter _Maple_ case did not even involve the additional criminal and civil violations of the DPPA nor the numerous out-of-court disclosures of personal information that occurred in the instant case. Nor did _Maple_ include an conspiracy between defendants to disclose this personal information as between State Farm's

(6)

Attorney of record, Herbert, and Shalk, which was confessed by Wiegard (Herbert's co-counsel for State Farm). Nevertheless, the allegations were held to be sufficient merely by filing the unredacted personal information on the CM/ECF system as was also done in the instant case by Shalk in 2006, 2008, 2011 and by Skiles in 2011. These filings in the Delaware federal district court caused injuries to Hurst as specified by the Maple court. Clearly, all Hurst's personal information was, and remains today, accessible worldwide on the internet after filing on the CM/ECF system which is accessible by the public by means of "PACER":

> "CM/ECF is the Court's Case Management/ Electronic Case Files system.... Public Access to Court Electronic Records (PACER) is an electronic access service managed by the Administrative Office of the United States Courts that provides access to public documents from all of the United States Federal Courts."

[Maple, supra, p. 368, n. 2]

The Maple court further explains:

> "Plaintiff's allege in their Amended Complaint that, while the personal information about them that was improperly disclosed in the Proof of Claim is no longer accessible by the general public through the court's CM/ECF or PACER systems, it is still available on the internet from other electronic systems that copied from PACER." (emphasis added)

[Maple, supra, p. 368]

Regarding Hurst's unredacted personal information provided to State Farm under §2721(b)(6) in 2001 and illegally disclosed by State Farm to Shalk for his unrestricted use in Delaware, including CM/ECF filings discussed above, the Maple court concludes as follows, on precisely analogous facts legally indistinguishable from those in the instant case, that:

> "Plaintiffs allege Defendant filed its Proof of Claim with Plaintiffs' social security numbers attached in an exhibit. The Court can only conclude that, by filing the Proof of Claim, Defendant intended to communicate its contents to the Court, the trustee appointed in this case, and any other party in interest who might examine the Court's docket. The information contained in the Proof of Claim was made readily available to the general public at large when it was filed on the Court's publicly accessible filing system. Therefore, Plaintiffs have alleged sufficient specific facts that would support a claim that Defendant intentionally communicated Plaintiff's social security numbers to the public."
>
> (emphasis added)

[Maple, supra, p. 372.]

**12.** The Fourth Circuit Court of Appeals explains the privacy concerns regarding a social security number as follows:

> "[A]n individual's informational privacy interest in his or her SSN is substantial. The privacy concern at issue is not, of course, that an individual will be

embarrassed or compromised by the particular SSN that she has been assigned. Rather, the concern is that simultaneous disclosure of an individuals *name* and *confidential* SSN exposes *that individual* to a heightened risk of identity theft and other forms of fraud." (emphasis added)

[Ostergren v. Cuccinelli, 615 F.3d 263, 283, (4th Cir. 2010) quoting from Sherman v. U.S. Dep't of the Army, 244 F.3d 357, 365 (5th Cir. 2001)]

13. In terms of breach of contract, State Farm and its agents Wiegard and Harbert as legal counsel, have breached the insurance contract with Hurst by flatly violating an integral part of the contract, e.g. State Farm's Privacy Policy containing *express* and *implied* covenants of good faith and fair dealing which are enforceable by Hurst. The injury and damage to Hurst's "informational privacy" is well recognized as the above-noted federal decisions in the Fourth Circuit set forth. As part of a confessed agreement (e.g. conspiracy), all defendants acted in concert under color of state law (e.g. Barker v. Huang, supra) to deprive Hurst of federal rights under the DPPA. Consequently, 42 U.S.C. §1983 is implicated, as discussed below.

Count II - DPPA Violations (18 U.S.C.A §§ 2721-2725)

14. The allegations contained in paragraphs 1-13 are incorporated here.

15. As discussed above in par. 10, no permissible

uses under §2721(b) were even considered when State Farm <u>agreed</u> with Shalk (the date is concealed by Shalk and Wiegard in their confessions quoted in par. 10) to their <u>unlawful</u> acts, i.e. the <u>obtaining</u> by Shalk and the <u>disclosure</u> by Harbert, on behalf of State Farm, of the DPPA protected information of Hurst. Again, all such acts were <u>authorized</u> by Harbin as the managing employee of State Farm. Shalk's and Skiles' later unlawful <u>obtaining</u> <u>and</u> <u>disclosures</u> under the DPPA in Delaware were the result.

16. It is clearly set forth in §2721(c) that <u>even an "authorized recipient"</u> (such as State Farm in 2001 when Hurst was required to provide his personal information on the affidavit of vehicle theft to State Farm) is <u>prohibited</u> from "<u>redisclosure</u>" of this DPPA protected information without a "permissible" use or Hurst's "express consent" pursuant to §2721(b)(11) or waiver under §2721(d). No permissible use, consent, or waiver has <u>ever</u> existed. Consequently, the defendants have fabricated an "absolute litigation privilege" in Delaware.

17. Quite disingenuously, the defendants proclaim in flat contradiction of the express, unambiguous language of the DPPA, and contrary to its plain meaning, that the state common law of Delaware provides them an "<u>absolute litigation privilege</u>" which prevails over the OPPA, a federal statute, without regard to the Supremacy Clause. On this point the Supreme Court has clearly spoken:

> "The Supremacy Clause declares federal law the 'supreme law of the land,'.... An excuse that is inconsistent with or violates federal law is not a valid excuse: The Supremacy Clause forbids

(10)

state courts to dissociate themselves from federal law because of dis-agreement with its content or a refusal to recognize the superior authority of its source."

[Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 751, n.12 (2012).]

Clearly a federal court must obey federal law no less than a state court.

18. As noted in pars. 11 and 15, Shalk made unlawful disclosures by filing Hurst's personal information on the CM/ECF to many unauthorized recipients in 2006 and 2008. (The recipients addresses will be provided in due course for the sake of present economy and simplicity.) Both Skiles and Shalk made unauthorized disclosures by filing on the CM/ECF in Delaware to many un-authorized recipients from 2006 through 2011, including the instant case's parties residing in Virginia (Harbert, Wiegard, and Harbin). These illegal disclosures were done under color of state law. (These addresses will be provided in due course.) Skiles illegally obtained the personal information either directly from Shalk or State Farm (or its employee Harbin, or legal counsels Harbert or Wiegard). In any event, the disclosure originated from the disclosure by State Farm to Shalk, which was redisclosed on the CM/ECF by Shalk and Skiles.

19. The particular circumstances of the instant case, involving a "law firm" (e.g. Shalk and Skiles, in separate law firms) obtaining DPPA protected personal information from a "large company" to violate the statutory right to privacy set forth in the DPPA, has been specifically condemned by the Third Cir-cuit Court of Appeals:

"The statute clearly prevents obtaining or using personal information 'for a purpose not permitted under this chapter ....' 18 U.S.C. §2724(a) .... Like the District Court, we decline to recognize an exception to the statute for which Congress has not provided.[20]"

Regarding a "large company" such as State Farm, footnote "20" states:

To hold otherwise would be to permit any union, or indeed _any law firm_, to access the DMV information of individuals at _nearly any large company_..., the DPPA's privacy protections would mean very little." (emphasis added)

[ _Pichler v. UNITE_, 542 F.3d 380, 396 (3d Cir. 2008).]

Similarly, the district court had previously held that:

"Plaintiffs are correct that under the DPPA _each instance_ of 'obtain[ing]' or 'use[]' constitutes a violation of the OPPA. Section 2724(a) states that one who 'obtains, _discloses_ or _uses_ personal information for an impermissible purpose violates the DPPA." (emphasis added)

[ _Pichler v. UNITE_, 457 F. Supp. 2d 524, 530 (E.D. Pa. 2006)]

20. The applicable statute of limitations for civil actions under federal law, including the DPPA is four (4) years under 28 U.S.C.A. § 1658(a). The DPPA violations are a "persistent, on-going pattern" constituting _continuing violations_ as set forth in _West v. Philadelphia Elec. Co._, 45 F.3d 744, 754 (3d Cir. 1995).

Count III - Violations Of Right To Privacy Cognizable
Under 42 U.S.C. §1983

21. The allegations contained in paragraphs 1-20
are incorporated here, including those relating to an
"informational privacy interest in his or her SSN,"
e.g. social security number set forth in par.12 above.

22. Regarding not only a "direct claim pursuant to
the DPPA" and a claim "separately enforceable under
Section 1983," it is held in Collier v. Dickenson, 477
F.3d 1306, 1308-1310 (11th Cir. 2007) that

> "We have no hesitancy in finding that
> the plain language of the DPPA clearly
> ... make it enforceable under Section 1983."

Defendants' alleged acts, including their confessed conspiracy
to do these acts in par. 10 above, violate Hurst's "right to
privacy" and "informational privacy interest" which are cognizable both
directly under the DPPA and pursuant to Section 1983.

Count IV - Misappropriation of Plaintiff's Name

23. The allegations contained in paragraphs 1-22
are incorporated here.

24. The Virginia common law recognizes a tort
for invasion of privacy for misappropriation of
Hurst's name by virtue of the criminal and
civil violations of the DPPA and State Farm's
Privacy Policy, involving, inter alia, false adver-
tising and representations of privacy to secure
more insurance business. Likewise the legal
counsels are violating Hurst pleaded privacy rights
and selling their "legal" services for commercial
purposes. The misappropriation is discussed on p. 369
of the Maple case pleaded in pars. 10 and 11 of this

complaint. By virtue of this misappropriation of Hurst's __name__, in conjunction with all the personal information protected by the DPPA and State Farm's Privacy Policy, Hurst's name is now a target for identity theft wordwide as pleaded in par. 11 of this complaint.

## Count V - Virginia Consumer Protection Act (VCPA) And the Virginia Personal Information Protection (VPIPA)

25. The allegations contained in paragraphs 1-24 are incorporated here.

26. The defendants, acting in concert, agreed to and did intentionally and willfully communicate Hurst's personal information, including his social security number to the general public. In addition, the defendants, and each of them, had and demonstrated, a willful desire to publish this personal information resulting in a "'willful' intentional communication" of Hurst's social security number under Va. Code. Ann. §§ 59.1-443.2(A)(1), 59.1-204(A) as set forth on p. 372 of the Maple case pleaded in pars. 10 and 11 of this complaint. Consequently, all defendants are liable for the acts of each member of the conspiracy set forth throughout this complaint.

27. Hurst has suffered substantial losses as a result of the defendants' violation of the VCPA and the VPIPA including costs filing numerous motions to prevent, terminate or mitigate the harm to himself due to the ongoing dissemination of Hurst's social security number.

28. Hurst has relied on the false and fraudulent misrepresentations made in State Farm's Privacy Policy to induce Hurst to contract with State Farm for insurance. They caused major losses and harm to Hurst's financial and physical security at home and abroad by making him a worldwide identity

(14)

theft target requiring substantial costs to Hurst to mitigate this major harm by litigation and other means, as set forth in pars. 11 and 12 of this complaint.

29. In addition, defendants, and each of them, by their actions, continuing at the present time, have caused Hurst mental and emotional anguish and distress with resulting physical harm. The actions of each of the defendants were and continue to be, malicious, willful and wanton.

30. Consequently, the defendants, and each of them, have violated the VCPA and the VPIPA, and continue to do so, in Virginia, with their false, deceptive, fabricated and fraudulent practices.

## Count VI - Civil Conspiracy

31. The allegations contained in paragraphs 1-30 are incorporated here.

32. The defendants, and each of them, have already confessed to the agreement to obtain, disclose, and "use" Hurst's personal information, including his social security number and other DPPA protected information. The state and federal claims pleaded in this complaint are clearly independent claims forming the basis for the civil conspiracy tort. Clearly, this particular civil conspiracy demonstrates willful and wanton violations committed with extreme malice. The Defendants' acts in concert, and confessed agreement, pleaded in par. 10 above and elsewhere in this complaint, acting under color of state law, constitute a civil conspiracy depriving Hurst of rights cognizable under the DPPA and 42 U.S.C.§1983.

## Count VII - Intentional Infliction of Emotional Distress

33. The allegations contained in paragraphs 1-32 are incorporated here.

34. The acts of the defendants, and each of them, intentionally inflicted emotional distress and physical illness on Hurst. The acts were done knowingly and with a brazen willfulness despite the unambiguous, express language of the OPPA and State Farm's Privacy Policy. This demonstrates extreme malice and wanton conduct which is shocking, outrageous and extreme beyond all bounds of a civilized society. Indeed, the OPPA violations are not only criminal but are subject to _mandatory_ fines pursuant §2723(a):

   "§ 2723. Penalties

      (a) Criminal fine. — A person who knowingly violates this chapter, shall be fined under this title"

In addition, a civil action allowing damages, including punitive damages is provided in § 2724.

35. The Fourth Circuit Court of Appeals has recognized the "heightened risk of identity theft and other forms of fraud" as set forth in par. 12 of this complaint. Likewise the _Maple_ court has emphasized that unredacted personal information is accessible on the internet which is _worldwide_. Furthermore, The injuries are _permanent_ since the information "is still available on the internet from other electronic systems that copied from PACER," as set forth in par. 11 of this complaint containing quotes from the _Maple_ case.

36. The foregoing factors clearly demonstrate a rare degree of shocking, outrageous behavior, continuing presently, which is unquestionably beyond all bounds of civilized society.

## Count VIII - Tortious Interference With Contractual Relations

**37.** The Allegations contained in paragraphs 1-36 are incorporated here.

**38.** Hurst and State Farm had an insurance contract at the time of the theft of his van in 2001. The contract was in force at all times relevant and continues in force through semiannual renewals at the current time despite State Farm's blatant breach of its Privacy Policy vigorously and expressly <u>objected to by Hurst</u> directly to State Farm and its employees and legal counsels.

**39.** Each and every defendant knew of the existence of Hurst's insurance contract with State Farm and of its conduct pleaded in this complaint.

**40.** The intentional, knowing and wilful acts of Shalk and Harbert (approved by Harbin as claims manager for State Farm overseeing State Farm's legal counsel) themselves <u>constituted</u> the breach of State Farm's insurance contract, of which its Privacy Policy was an integral part. The pleaded facts demonstrate that an agreement (i.e. <u>a conspiracy</u>) existed pursuant to which Shalk had unrestricted use in <u>Delaware</u> of Hurst's personal information. This conspiracy led directly to numerous other violations pleaded in this complaint by each and every defendant, including Skiles. These violations were <u>overt acts implementing</u> the civil conspiracy consumated by Shalk and Harbert on behalf of State Farm. These <u>implementing acts</u> continued quite overtly in 2008 and 2011 constituting yet more DPPA and other pleaded violations for which all the co-conspirators are <u>vicariously liable</u> for all acts in furtherance of the conspiracy by the other members of the conspiracy.

(17)

41. No justification can reasonably even by proffered by any defendant for the DPPA violations, both criminal and civil, that are set forth in this complaint. The acts constituting the DPPA violations, as well as the breach of State Farm's Privacy Policy, are themselves the very acts interfering with Hurst's contractual relations with State Farm. The defendants' brazen claim of an "absolute litigation privilege," based on Delaware law, flatly violates the DPPA and the Supremacy Clause, and guarantees continued injuries to Hurst. Multiple injuries caused by the latter violations are pleaded in detail throughout this complaint causing major financial losses, costs, and other personal injuries. The defendants will continue their illegal "use" of the DPPA protected social security numbers and other unredacted personal information of Hurst until ordered to comply with the applicable federal and state law.

The continuing acts are interference with contractual relations, with each act violating State Farm's Privacy Policy. The last known act continuing in 2011 (latest CM/ECF filing) is merely another egregious, overt act pursuant to the defendants' initial conspiracy, the date of which they still carefully conceal, between Shalk and Harbert acting as legal counsel for State Farm. Clearly, their continued "use" of this personal information, used by the defendants as an ongoing weapon is a "use" as set forth in the DPPA and as discussed in par. 19 of this complaint. This "use," as specifically set forth in the DPPA (pleaded in par. 19 of this complaint) and the ongoing disclosures, including filing on the CM/ECF system which is permanent (pleaded in par. 35), clearly constitutes irreparable harm justifying injunctive relief.

42. As pleaded in pars. 7 and 10 above, Hurst provided State Farm, pursuant to §2721(b)(6), many items of Hurst's DPPA protected "personal information," including his social security number ("highly restricted personal information")

As defined in §2725 of the DPPA. As pleaded, this information was provided in reliance on State Farm's false representations in its Privacy Policy. Such false representations are expressly made "unlawful" under §2722 (b) and "knowingly to obtain or disclose" such information is made "unlawful" under §2722 (a). Undeniably, State Farm became an "authorized recipient" pursuant to § 2721(b)(6) and is prohibited from "redisclosure" under §2721(c) as an "authorized recipient." Likewise, it is the personal information itself contained in the "motor vehicle record" defined in § 2725 (1) that is protected. Clearly, the identifying information and numbers are themselves the very records "issued by a department of motor vehicles," whether to an intermediary whose personal information is protected (such as Hurst) or to State Farm or other entity acting as a reseller or rediscloser as an "authorized recipient" under §2721(c):

> "If the phrase 'in connection with' in (b)(4) included solicitation by lawyers, then a similar reach for that phrase could apply to other exceptions resulting in further frustration of the Act's design. Subsection (b)(6) allows an insurer and certain other parties to obtain DMV information for use in connection with... underwriting.' §2721(b)(6)." [§2721(b)(6) includes insurance "claims investigation."] (emphasis added)

[Maracich v. Spears, 133 S.Ct. 2191, 2205 (2013)(emphasis added); regarding other disingenuous and rejected "defenses", see Gordon v. Softech Intern Inc., 726 F.3d 42(2d Cir. 2013); Pichler v. UNITE, 542 F.3d 380(3d Cir. 2008); Taylor v. Acxion Corp., 612 F.3d 325(5th Cir. 2010); Roth v. Guzman, 650 F.3d 603 (6th Cir. 2011); Graczyk v. West Pub. Co., 660 F.3d 275(7th Cir. 2011); Senne v. Village of Palatine, Ill., 695 F.3d 597(7th Cir. 2012); Cook v. ACS State + Local Solutions, Inc., 663 F.3d 989(8th Cir. 2011); Howard v. Criminal Inf. Servs. Inc., 654 F.3d 887 (9th Cir. 2011); Also see Maracich v. Spears, 675 F.3d 281 (4th Cir. 2012)(vacated and remanded by Maracich v. Spears, supra, at 133 S.Ct. 2191).]

## Request For Relief

Wherefore, Hurst requests the following relief to be granted:

1. Statutory damages under 18 U.S.C.A. 2724(b)(1) and other applicable law;

2. Compensatory damages, including general and special damages, in an amount exceeding #1,000,000.00, to be specified;

3. Punitive damages in an amount exceeding #1,000,000.00, to be specified;

4. Injunctive relief to be specified;

5. Declaratory relief to be specified;

6. Attorney fees and litigation costs under 18 U.S.C.A. 2724(b)(3) and other applicable law; And

7. Other Appropriate relief.

Date: <u>April 29, 2015</u>

Respectfully submitted,

Jerry A. Hurst

Jerry A. Hurst, pro se
Plaintiff
445 N. Water St., Apt. 6
Woodstock, VA 22664
(540) 459-7136

PLEASE PRESS FIRMLY

Print postage online - Go

home or office at usps.com/pickup

ENVELOPE

U.S. POSTAGE
PAID
WOODSTOCK, VA
22664
MAY 04, 15
AMOUNT
$19.99
00106857-07



# EXPRESS MAIL
UNITED STATES POSTAL SERVICE

## Flat Rate
## Mailing Envelope
### For Domestic and International Use
Visit us at usps.com

1007

When used internationally
affix customs declarations
(PS Form 2976, or 2976A).

EG 848867922 US

# EXPRESS MAIL
UNITED STATES POSTAL SERVICE

**Mailing Label**
Label 11-B, March 2004
Post Office To Addressee



MAY 15

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | | Employee Signature |
| Mo. Day | ☐ AM ☐ PM | | |
| Delivery Attempt | Time | | Employee Signature |
| Mo. Day | ☐ AM ☐ PM | | |
| Delivery Date | Time | | Employee Signature |
| Mo. Day | ☐ AM ☐ PM | | |

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

☒ WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if customer requests waiver of signature.

Federal Agency Acct. No. or
Postal Service Acct. No.

I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

**NO DELIVERY**
☐ Weekend ☐ Holiday

Mailer Signature *Jerry A. Hurst*

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Day of Delivery | Postage |
| 22664 | ☐ Next ☐ 2nd ☐ 2nd Del Day | $ 1999 |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| 5. 4. 15 | Month 5 Day 05 | $ |
| Time Accepted | Scheduled Time of Delivery | COD Fee | Insurance Fee |
| 2:04 PM | ☐ Noon ☐ 3 PM | $ | $ |
| Flat Rate ☒ or Weight | Military | Total Postage & Fees |
| | ☐ 2nd Day ☐ 3rd Day | $ 1999 |
| lbs. ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials |

**FROM:** (PLEASE PRINT) **PHONE** ( 540 ) 459 - 7136

Jerry A. Hurst
445 N. Water St., Apt. 6
Woodstock, VA 22664

**TO:** (PLEASE PRINT) **PHONE** ( 302 ) 573 - 6170

Office of the Clerk
United States District Court
844 N. King Street, Unit 18
Wilmington, Delaware 19801-3570

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

1 9 8 0 1 + 3 5 7 0

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit **WWW.USPS.COM**

PRESS HARD. YOU ARE MAKING 3 COPIES.

082708_EM_EP13F OCT 2008

USPS packaging products have been awarded Cradle to Cradle Certification™ for their ecologically-intelligent design. For more information go to mbdc.com/usps

Cradle to Cradle Certified™ is a certification mark of MBDC.

Please recycle.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; Oct. 2008; All rights reserved.